```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                           20 Cr. 623 (JSR)

WILLIE DENNIS,

                 Defendant.              Remote Conference
------------------------------x

                                         September 23, 2022
                                         4:05 p.m.

Before:

                    HON. JED S. RAKOFF,

                                         District Judge

                         APPEARANCES

DAMIAN WILLIAMS
     United States Attorney for the
     Southern District of New York
BY:  SARAH L. KUSHNER, ESQ.
     STEPHANIE SIMON, ESQ.
     KIMBERLY J. RAVENER, ESQ.
     Assistant United States Attorneys

WILLIE DENNIS
     Pro Se Defendant

DEBEVOISE & PLIMPTON LLP
     Attorneys for Non-Party John W. Thompson
BY:  JIM PASTORE, ESQ.
     AASIYA F.M. GLOVER, ESQ.
```

1          THE COURT:  This is Judge Rakoff.  Would the
2    parties—-counsel and the defendant pro se—-please identify
3    themselves for the record.
4          MR. PASTORE:  Yes, your Honor.  For John W. Thompson,
5    recipient of a Rule 17 subpoena issued by the defendant
6    Mr. Dennis, this is Jim Pastore of Debevoise & Plimpton, and
7    joining me is Aasiya Glover, one of my associates.  Good
8    afternoon.
9          THE COURT:  Good afternoon.
10         Anyone here for the government?
11         Hello?
12         MS. SIMON:  Good afternoon, your Honor.  This is
13   Stephanie Simon for the government.  I believe that my
14   colleague Sarah Kushner is on as well.
15         MS. KUSHNER:  Yes, I am.  Sorry.  I got disconnected.
16         THE COURT:  And Mr. Dennis, are you there?
17         DEFENDANT DENNIS:  Good afternoon, your Honor.  This
18   is Willie Dennis, the defendant, and I'm also representing
19   myself pro se.
20         THE COURT:  All right.  So let me hear first from
21   counsel representing Mr. Thompson, objecting to the subpoena.
22         MR. PASTORE:  Thank you, your Honor.
23         The subpoena was issued to Mr. Thompson on or about
24   September 8th.  That's when it was served on him.  Pursuant to
25   your Honor's individual rules, I have an email prepared, and

I'm happy to share that document with the Court, if it would be helpful. Having met and conferred with Mr. Dennis, Mr. Thompson wishes to move to quash the subpoena, and I understand that the government --

DEFENDANT DENNIS: Your Honor, your Honor, I have never met Mr. Pastore. I object to that statement.

THE COURT: No, no, no, no. No. The basic rules of decorum apply even on a telephone conference, and of course there is a court reporter. So we'll hear first from counsel for Mr. Thompson, without interruption; then we'll hear from the government, if it wishes to say anything; and then we'll hear from Mr. Dennis, also without interruption. The only interruptions that are permitted are by the Court to ask questions. So Mr. Dennis, when we get to you, you can state whatever objections you have, but do not interrupt counsel for Mr. Thompson.

So go ahead, Mr. Pastore, counsel for Mr. Thompson.

MR. PASTORE: Thank you, your Honor. And for the court reporter's benefit, this is Jim Pastore again speaking.

Your Honor, we're seeking to quash this subpoena pursuant to this Court's authority in *United States v. Weigand*, 520 F.Supp.3d 609. Our motion is premised on the grounds that the subpoena is unreasonable, oppressive, and, in any event, lacks the requisite specificity. It's unreasonable because it seeks information that's irrelevant to Mr. Dennis's criminal

case; it's oppressive because it seeks to compel the testimony of a man who lives across the country and who has no relationship to the facts at issue in this case, and who has no information to provide about this case that could not be better provided by the others who we understand have already been subpoenaed in this case; and finally, whatever limited relevance the subpoena might have—-and we're not conceding that it does—-it's far too broad.  It seeks, for example, all communication about a variety of topics, in some instances dating back 13 years, and for that reason, it also needs to be quashed.

        I'm happy, your Honor, to lay out in more detail, if it would be helpful for the Court, some of the background regarding the conversations --

        THE COURT:  Well, let's hold off on that.  Let me hear next from the government, but we'll come back to you on rebuttal.

        MR. PASTORE:  Thank you, your Honor.

        THE COURT:  Is there anything the government wanted to say?

        MS. KUSHNER:  Your Honor, this is Sarah Kushner.

        The government wholeheartedly supports, for all the reasons that Mr. Pastore just set forth, their motion to quash the subpoena.

        THE COURT:  Yes.  I think the government has standing

to object on grounds of relevance. I'm not so sure the government has standing to object on grounds of overbreadth or oppressiveness. These are things that the subpoenaed party can properly raise, but the oppressiveness, for example, to the extent it's based on the fact that the witness is across the country or something like that, that's not something I think the government can raise. However, relevance is something the government can raise, and to the extent that that was included as it was in the argument for oppressiveness, to that extent, the government will be taken to have joined in the motion to quash.

So let me hear now from Mr. Dennis.

DEFENDANT DENNIS: Your Honor, I essentially -- I have several objections that I would like to have on the record today.

I am -- well, first, I am without standby counsel, as I terminated my prior standby counsel, Karloff Commissiong, on Monday, September 19th, because he advised me not to seek the witness testimony of the District Attorney's Office of the City of New York on the grounds that the office had nothing relevant to say, despite his knowing that the New York City District Attorney's Office had declined to indict me four months before this federal indictment on the same facts, and that a state prosecutor's threshold for indictment is lower than the federal threshold for indictment. And as of yesterday, the Court

denied me -- denied my request for appointment of a new standby counsel, so I'm currently representing myself, without the advice of standby counsel.

There are three members of the executive team of Microsoft who have been issued subpoenas and are critical to this issue today--including Satya Nadella, the chairman and chief executive officer of Microsoft; and Bradford Smith, the president and vice chairman of Microsoft--who are not present and thus will be unable to respond to the fundamental question at issue today:  Why are three members of the executive team of the fifth largest publicly traded corporation in the world included on the Department of Justice's no-contact list which subjects me to arrest and incarceration, even as of today, in a case which is related solely to the alleged email harassment of partners of Microsoft's preferred legal provider, KL Gates?  I object.  I object to the fact that subpoenas have been issued and, understanding the corporate barriers the powerful and wealthy are able to erect to prevent service, the Court has not permitted service via email to Mr. Smith, to enable him to be present today, thus providing him and each of the other officers of Microsoft with the opportunity to say, separately, "I do not know why I'm on the government's no-contact list."  I object as the Southern District of New York, for one year, and continuing as of today, have made me subject to arrest and incarceration for contacting Mr. Thompson and other members of

1   the Microsoft executive team, yet, as of the date of this
2   conference, have not provided me with the reason.  Thus, if
3   Mr. Thompson's request to squash his subpoena is granted, I
4   will be denied my constitutional right to confront my accuser.
5   And I must assume Mr. Thompson and the other members of the
6   executive Microsoft team are accusers.  I object as your Honor
7   has strictly enforced the bail agreement which subjects me to
8   arrest and incarceration, even as of today, should I contact
9   Mr. Thompson or the other members of the Microsoft team, yet
10  has not inquired of the Southern District of New York why these
11  individuals are on the no-contact list prior to this conference
12  to allow me to prepare a proper response.
13          I finally object because three days before my son's
14  birthday, I remain subject to these draconian bail terms which
15  prevent me from seeing him, and I may be prevented from having
16  my constitutional right to confront accusers such as
17  Mr. Thompson.
18          THE COURT:  All right.  So -- I'm sorry.  Anything
19  else?
20          DEFENDANT DENNIS:  And that's it, your Honor.
21          THE COURT:  So I think we should make clear for the
22  record several things.
23          First, bail in this case was set by Judge Schofield,
24  to whom this case was originally assigned, and Mr. Dennis,
25  since the case was reassigned to me, has made no application

for any changes in his bail conditions. And if, on a separate conference call with the government, Mr. Dennis wants to make an application for changes in his bail, of course I will consider that. This is the first time, ever, with this Court, this judge, that Mr. Dennis has raised the issue of his bail conditions, and that can be the subject of an application. I make it very easy for parties to bring applications. All they have to do is put together, as we did today, a joint telephone conference, and then I can hear counsel for both sides make their arguments and then I can rule. And that way we move things along very rapidly. So Mr. Dennis, if you want to make, at any time beginning Monday, a separate application for changes in your bail conditions, you should arrange with the government to make a joint call, with, of course, a court reporter.

Secondly, although this and several of the other subpoenas that Mr. Dennis has propounded--all of which I allowed to be served--make considerable reference to the no-contact list, that, again, was something that was put together when Judge Schofield was in charge of this case, and no application was previously made to me at any time to change that list or modify it in any respect. So to the extent you want to make that either as part of your change in bail application or an independent application, again, I'd be happy to hear that through a joint telephone call with the government

1  beginning any time Monday.

2  Third, let me ask the government: Is Mr. Thompson a
3  trial witness?

4  MS. KUSHNER: No, your Honor. Mr. Thompson is not a
5  trial witness. He is neither -- he is not a statutory victim,
6  or victim in this case either. As the Court alluded to, his
7  name was included on a proposed no-contact list that the
8  government prepared fairly swiftly after a lengthy bail
9  hearing, and upon the judge's decision to order the defendant's
10 release, in an abundance of caution, the government asked that
11 the defendant not contact, in addition to his former
12 colleagues, other individuals that he had been reaching out to
13 around the same time as the charged conduct. But there's no
14 evidence, nothing relevant about Mr. Thompson; the government
15 has never spoken to him, and has no plans to do so, or to call
16 him as a witness.

17 THE COURT: And why was he on the no-contact list?
18 MS. KUSHNER: He was a recipient of emails at that
19 time that also involved other individuals of K&L Gates, and at
20 that time it seemed like, in order to ensure the safety of the
21 community and others upon the defendant's release, that the
22 individuals mentioned in certain -- the individuals who
23 received certain communications around the time of the charged
24 conduct should be included on that list, which was proposed to
25 the defense, and no objections were raised at that time, but I

1  will note that the enforceability of that no-contact list is
2  somewhat unclear and that the court at the time ordered that
3  the defendant will not have any contact with former or current
4  employees of the defendant's former law firm but then asked the
5  government to propose a follow-up no-contact list that was
6  never actually and formally incorporated into the terms of the
7  defendant's bail conditions.
8         THE COURT:  All right.  Well, as I say, if Mr. Dennis
9  wants to seek changes in the bail conditions and/or changes in
10  the no-contact list, all of which were entered into before this
11  case was assigned to this judge, then he's free to do so
12  beginning any time Monday.  No one has previously raised with
13  this Court, since the reassignment, anything about the bail
14  conditions or the no-contact list, so that is for a separate
15  application.
16         So before I rule on the instant application, anything
17  further, Mr. Dennis, you wanted to say?
18         DEFENDANT DENNIS:  Yes, your Honor.
19         I mean, part of my defense at trial will be -- is my
20  belief that K&L Gates, with some of its clients, moved to
21  engineer this indictment against me.  And you go back to the --
22  to my reference point, which is, why is three members of the
23  executive team of the fifth largest publicly traded corporation
24  in the world included on the Department of Justice's no-contact
25  list?  Maybe one ends up there, by accident.  Then we're two,

1   and now we're saying three individuals, all in the executive
2   suite, and all related to the fact that K&L Gates is their
3   preferred legal provider?  I don't think that's a coincidence.
4   And I think that I deserve the opportunity to be able to talk
5   to each one of them and ask them:  Why were you on the list?
6   Why were you included?
7           And I disagree with the government because the Federal
8   Defenders of New York repeatedly, during the course of this
9   case, reminded me not to contact anyone on that list or I would
10  be immediately arrested.  The pretrial officer here in Florida
11  reminded me repeatedly:  Do not contact anyone on that list or
12  we will come to your home and arrest you.  So it was not an
13  innocuous list that was put together, and it was enforced by,
14  while I was in New York, pretrial in New York, pretrial here in
15  Florida, as well as my defense counsel for seven months
16  constantly reminding me, you are liable and you face serious
17  consequences if you talk to any of these individuals.  So I do
18  not believe that this is an innocuous, innocent sort of
19  mistake.  I believe there's something that needs to be explored
20  because of what I've been subjected to.
21          And I return to the fact that there are three members
22  of the executive team of Microsoft, and I think the point is
23  right--I live over 2,000 miles away from them, I've never seen
24  them, why were they on that list, and -- given that KL Gates is
25  their preferred provider, and they have brought these charges.

M9N1DENC

THE COURT:  So I come back to what I said a few moments ago.  I am perfectly happy to consider, any time beginning Monday, an application from Mr. Dennis to modify, change, remove, or alter in any respect the so-called no-contact list and to explore, if appropriate, how people's names got on the no-contact list, but that is not the matter before the Court this afternoon.  The matter before the Court this afternoon is the subpoena issued to Mr. Thompson.

The subpoena, on its face, is grossly overbroad, and rather than reciting the several pages of the attachment to the subpoena specifying what was to be produced, I will file the subpoena, and I think it will be apparent how overbroad it is.

It also appears to the Court that even though it was a trial subpoena and made returnable on the first day of trial, the matter regarding the no-contact list has either nothing to do with the trial or is at best tangential.  The question that Mr. Dennis is raising is whether the no-contact list was in some sense engineered by other people, and even assuming that were so, that has nothing to do with the trial.  It would be a basis for an application or perhaps even relief prior to trial, and that's why I'm happy to take it up, beginning any time Monday.

The subpoena, though, on its face is grossly overbroad, has little or at best very little to do with any issue that could arise at trial.  And I think that's

1  overstating it.  It has really nothing to do with any issue
2  that would arise at trial.  It may have to do with issues that
3  would be the subject of an objection to the no-contact list.
4  So I am going to quash the subpoena as a trial subpoena, quash
5  it totally in its current form, which is grossly overbroad, but
6  if Mr. Dennis wants to make an application with the government,
7  any time beginning Monday, with respect to the no-contact list,
8  and if, as a result of that application, I feel that there may
9  be documents relating to the no-contact list that might be
10 relevant, I will reconsider that limited portion of this ruling
11 at that time, with full notice, of course, to counsel for
12 Mr. Thompson.
13           So I will issue an order in a few minutes which will
14 quash the subpoena for the reasons stated on this transcript,
15 and I will attach the subpoena to that order so that any
16 reviewing court can see why this Court regarded it as
17 oppressive and overbroad.
18           So that concludes this proceeding.  Thank you very
19 much.  Good-bye.
20           DEFENDANT DENNIS:  Your Honor, may I add something to
21 the record, please?
22           THE COURT:  Go ahead.
23           DEFENDANT DENNIS:  I believe that by making this
24 decision, you have -- basically my defense is, to a great
25 extent, being gutted, because I do not have the ability to

1   prove, which I thoroughly believe, that this was a conspiracy,
2   that this was not an accident, that these three individuals
3   showed up on this list, and that they were involved in
4   engineering the Justice Department's filing of this complaint
5   against me.  By not having them as witnesses, by not having
6   Mr. Thompson as a witness -- and I assume that where this is
7   going is I will not have Brad Smith and that you will quash all
8   the other subpoenas related to this -- will not give me the
9   opportunity to talk to the executive members of Microsoft and
10  saw:  Why were you there?  Because I believe they were there
11  because they orchestrated these things.
12            THE COURT:  So the difficulty I have with your point,
13  Mr. Dennis, is: first, again, you have not made any application
14  to this Court regarding the contact list; secondly, what you're
15  alleging is at this point something that, if I understand what
16  you're saying, is a conspiracy that you have come to believe
17  but you have no independent evidence of, and so that is not a
18  sufficient basis for then filing this and, as you correctly
19  point out, numerous other trial subpoenas—-all of which I
20  allowed to be served—-asking for vast quantities of documents
21  relating to your conspiratorial theory.  That's why I said, in
22  ruling that I was quashing the subpoena, that it was without
23  prejudice to revisiting the narrow issue of whether there may
24  be some documents out there supportive of your theory if and
25  when you make an application with respect to the no-contact

1  list and after I've heard from you and the government on that
2  basis. So I have held out that possible exception, but at the
3  moment it is nothing but a belief on your part, and a belief is
4  not a basis for a subpoena of this -- perhaps for any subpoena,
5  but certainly not a subpoena of this huge breadth and length.
6  So the Court --
7             DEFENDANT DENNIS: Your Honor, your Honor, I have one
8  other comment to make, which is material.
9             In all my applications for my subpoenas, I said I
10 would be satisfied with just trial testimony, and the
11 documentation wasn't necessary.
12            THE COURT: Well, it's not trial testimony.
13            DEFENDANT DENNIS: I would -- I would --
14            THE COURT: You know, you have now fired three --
15 first you fired Federal Defenders --
16            DEFENDANT DENNIS: They never filed a subpoena, in
17 seven months.
18            THE COURT: Excuse me. I'm not questioning your right
19 to fire them. I'm just reciting --
20            DEFENDANT DENNIS: They --
21            THE COURT: Are you going to allow me to finish my
22 sentence like I allowed you to finish yours?
23            DEFENDANT DENNIS: Okay, your Honor.
24            THE COURT: Thank you.
25            And then you fired your first standby counsel which

1    Judge Schofield had appointed, and I appointed second standby
2    counsel--frankly, one of the best counsel in New York, in my
3    view--Mr. Commissiong.  And you had your differences with him,
4    and you chose to fire him.  If you had kept counsel, counsel
5    might well have been advising you that the point you're
6    raising, even if it has a basis, is not directed at the trial,
7    it's directed at pretrial applications like the type I'm
8    inviting you to make on Monday.
9            So I can't serve as your lawyer, but I am trying to
10   make clear to you that this Court is perfectly open for you to
11   make an application of the sort I've described, and if you do
12   and if you convince the Court that you should have the right to
13   take statements from any of these people, I'll consider that
14   then.  That's not before the Court today.  So --
15           DEFENDANT DENNIS:  Well, your Honor, I'd like to add
16   something to the record.
17           THE COURT:  Yes, but then this is the last point,
18   Mr. Dennis.  This is --
19           DEFENDANT DENNIS:  Certainly.  Okay.  I am
20   representing myself, so I appreciate you giving me this
21   courtesy.  I had the Federal Defenders for over seven months.
22   They were aware of this issue in December of 2021 and they
23   never followed up on it, though I repeatedly raised it with
24   them.  I had the Federal Defenders from November until May of
25   2022.  They never issued a single subpoena to anyone, which I

1  did not become aware of until much later.  They never filed a
2  speedy trial motion, which would -- means this matter would be
3  over with by now.  And they never complied with the
4  government's request for discovery.  So that's why I terminated
5  them.  Otherwise, no subpoenas would be issued and we would not
6  be discussing this issue today if they hadn't issued subpoenas
7  over the seven-month period, so I consider that to be gross
8  negligence.
9           THE COURT:  All right.  Just to put this in terms that
10 would be more familiar—-while you're a lawyer, you're not a
11 trial lawyer—-the assertion you're making now is commonly
12 classified as so-called ineffective assistance of counsel, and
13 that is an application you can make, and I will consider it if
14 and when you make it, but it, again, has nothing to do with the
15 trial subpoena.
16          So these are niceties that you may not appreciate as
17 not being a litigator, but as a lawyer, I'm sure you
18 appreciate, from your extensive years of practice, that the
19 rule of law has clear boundaries and clear definitions.  And so
20 if you want to make an application related to ineffective
21 assistance of counsel, I'll consider that as well.  It has
22 nothing to do with the issue before the Court today.
23          So that does conclude this proceeding, and I will
24 issue my bottom-line order in short order.  Thanks a lot.
25 Bye-bye.     o0o