UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATE OF AMERICA

   -  against -                                     **20 Cr. 623 (JSR)**

Willie Dennis,                                          Bond Hearing Application
                                                          18 U.S.C. §3143(a)(1)

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

     David Jason Cohen, attorney of record, makes the following application for release on bond or appropriate conditions, pending the imposition of sentence pursuant to 18 U.S.C. §3143(a)(1) on behalf of defendant, Willie Dennis. The information contained herein was provided from various sources that are credited within the application. Defense counsel describes and provides, where available, supporting documentation and information of the relevant considerations that constitute clear and convincing evidence that should reasonably assure this Court that defendant is not a risk of flight and that he would not pose any danger to any other person or the community generally should he be released as requested pending the imposition of sentence. Counsel has also listed the conditions the Court may impose, consistent with 18 U.S.C. §3142(c) and with conditions previously imposed pre-trial, that would reasonably assure the defendant's return to Court for sentencing and the safety of all persons and the community upon his release pending sentence.

     Federal law disfavors release on bond pending sentencing after a defendant has been convicted, and a defendant's right to the seek an order granting the same is purely statutory, rather than constitutional in nature. See, *U.S. v. Abuhamra*, 389 F.3d 309, 317-18 (2d Cir. 2004) (citing

*Williamson v. United States*, 184 F.2d 280, 281 [2d Cir. 1905]); 18 U.S.C. § 3143. Nevertheless, a defendant remains entitled to the enforcement of the statutory right where they can rebut the presumption (in favor of detention) with clear and convincing evidence that they are neither a flight risk nor a danger to the community. 18 U.S.C. § 3143(a). Indeed, where a defendant makes such a showing through clear and convincing evidence, release under the statute is mandatory rather than discretionary. See, *U.S. v. Abuhamra*, 389 F.3d at 319 (noting the statutory language that the judge "shall" order release where the defendant satisfies the evidentiary burden). Due process requires that a defendant is entitled to, at minimum, "some type of hearing" where they have an opportunity to demonstrate they satisfy the burden of proof established by 18 U.S.C. § 3143(a)(1). *Id* at 320.

**I-     Mr. Dennis is Not a Flight Risk**

Willie Dennis is a 60-year-old native and lifelong resident of New York City who was a licensed and practicing attorney for over 30 years and who had never been convicted of a crime prior to his 2020 indictment and ultimately, his conviction at trial in the instant matter in October of 2022. While awaiting trial and under supervision, first in the Southern District of New York and later the Middle District of Florida for nearly one year, Mr. Dennis was fully compliant with his monitoring in every respect. See, *PSR (Draft)* ¶7.

The elder of the two surviving children[1] of his parents, Willie Dennis Sr. and Doris Dennis, Mr. Dennis had, up until being remanded after his conviction at trial on October 17, 2022, been their sole and constant caretaker. His parents, who are each in their 80's and living in Sanford, Florida, both suffer from a constellation of debilitating health problems that render them unable to care for themselves or one another without substantial outside assistance on a daily basis. His 87-

---

[1] The defendant lost his sister, Lisa Dennis, to a heart attack in 2017 at the age of 55. See, *PSR (Draft)* ¶86.

year-old father suffers from dementia and has both vision and hip problems that severely restrict his abilities. Mr. Dennis' mother, 82, suffers from serious heart problems (as does Mr. Dennis himself discussed, *infra*) as well as lupus, hypertension and arthritis which combine to render her bed-ridden in recent years. *PSR (Draft) ¶85*. As the Court had permitted, while his case was pending pre-trial, the defendant transferred his pre-trial supervision to Florida and lived full-time with his parents serving the role of in-home and round the clock caretaker. See, ECF No. 16. Since Mr. Dennis has been remanded, the daily care and attendance to his parents has been covered by a harried patchwork of other relatives, but the situation is completely unsustainable and the defendant's brother and other loved ones do not know how the care for Mr. Dennis' parents will be managed if Mr. Dennis continues to remain absent from their lives any longer. Just as he did for over ten (10) months prior to his trial in October 2022, Mr. Dennis seeks the Court's grace in allowing him to be released under conditions that will allow him to continue to provide the much-needed care for his parents through his future date of sentencing, while also satisfying the Court they will be sufficient to assure his return for the imposition and completion of such future sentence.

Mr. Dennis' own current and severe health concerns and need for treatment also clearly demonstrate that he poses no risk of flight whatsoever. Immediately following his conviction at trial and being remanded thereafter, BOP medical professionals determined that Mr. Dennis' severe heart conditions required immediate hospitalization and attention. See, Exh. A, *BOP Medical Records 10/18/22 to Present (selected)*. His conditions include: severe coronary artery disease, severe peripheral vascular disease (caused by right femoral artery occlusion), 3 vessel disease, aneurysm of right femoral artery, hypertension, type 2 Diabetes, and inguinal and umbilical hernias for which a variety of treatments and future procedures will be required. See,

3

Exh. B, *November 18, 2022 Letter of Attending Physician at Bellevue Hospital Center, Nate Link MD*; see also Exh. A, *List of Current Conditions (BOP Records)*. To treat this range of problems, Mr. Dennis receives several daily rounds of medication that are being constantly evaluated and tweaked by his doctors and treatment providers when he is not incarcerated. Exh. B, *Current Medications*. No such tweaking or meaningful evaluation takes place while incarcerated. As his attending physician from his recent stay at Bellevue Hospital describes, the three most significant of Mr. Dennis' are his severe coronary artery disease, his severe peripheral vascular disease and the large inguinal hernia and umbilical hernia. See, Exh. A. Given his severe cardiac disease, the substantial risk of a major complication during any surgery (the treatment recommended for Mr. Dennis' most severe conditions), and his present state of incarceration, Mr. Dennis has elected to hold off on these procedures for the time being and instead try to manage them through alternative means. See, Exh. B. The reality is that he is but one step away (the emergence of cardiac symptoms) from requiring heart surgery and is at an ever-present and elevated risk of a major cardiac event. Mr. Dennis is currently living in fear of his own death having lost other loved ones in recent years, including his sister, to the very same type of ailments.

As noted, his heart condition is so severe that during his recent stay at Bellevue Hospital in October-November of this past year, he was advised by his treating physicians that the risk of his death during a surgical procedure for any of his three primary conditions is far too high to make any such operation advisable. Instead, he has been advised to continue to try to manage his heart health through diet and medication only and monitor his progress and response to medication before having any type of surgery. The problem for Mr. Dennis however, like any inmate at MDC, is that once he is returned from the hospital, the follow-through at the facility, in terms of medical services and monitoring of his complex cardiological and hernia conditions and his responses to

4

different courses of medication, is sorely lacking[2]. Moreover, the environment in which Mr. Dennis lives at MDC is chaotic, anxiety-inducing and turbulent. What Mr. Dennis so desperately needs is to be able to obtain the regular care of a host of doctors, most importantly a cardiologist, for his serious medical conditions with whom he can plot the most thorough and individually-tailored treatment plans. This type of care is simply impossible and unavailable to Mr. Dennis in his present institutional setting and he lives each day fearing it will be his last.

Should his instant application be granted, Mr. Dennis will be wholly focused upon resettling himself in the role of caretaker for his parents and in meeting with his personal doctors and health care providers to determine the best course of treatment for his most recent medical emergency that occurred in October of 2022 and remains ongoing. He is simply not in any physical condition to do anything other than focus on his own health and the needs of his elderly, enfeebled parents. Mr. Dennis would not, but moreover, could not go "on the run" where he would quickly lose access to the doctors and medications and other treatment that are necessary to keep him alive. Taking such a reckless course of action- a course of action completely out of character for Mr. Dennis (even in the context of his criminal conviction) would also be an act of ultimate abandonment of his family, most notably his elderly parents- the two individuals Mr. Dennis has remained most steadfastly focused upon throughout the time this matter has been pending. The Court can- and the defense submits the Court should- take notice of the totality of circumstances of which it has become aware throughout the life of this case in comfortably finding, by clear and convincing evidence, that Willie Dennis will not abandon either his will to live nor his parents if released and will remain compliant with all aspects of his release.

---

[2] Mr. Dennis experienced this after his arrest when BOP medical and corrections staff were unable to complete the steps necessary to obtain his medications in a timely fashion. See, Exh. A, *BOP, Health Service, Clinical encounter – Administrative Note, 11/22/2021.*

While it is certainly true that Mr. Dennis faces a potential sentence of a substantial period of incarceration[3], he does not face any mandatory minimum period of incarceration and remains statutorily eligible for a probationary sentence. 18 U.S.C. §3561(c)(1); see also, *PSR (Draft) ¶120*. Moreover, the probation department has noted Mr. Dennis' severe heart condition may be a factor that would lead the Court to impose a sentence outside of the advisory guideline system. *PSR (Draft) ¶132*. While counsel is cognizant the instant application is wholly distinct from a future sentencing submission on the defendant's behalf and intends to make no forecast as to what sentence this Court may impose, it remains noteworthy that in the universe of federal sentencing exposure, his convictions nevertheless may result in a sentence of non-incarceration which would of course militate against a finding that he would be an inherent flight risk facing a long period of incarceration at sentencing.

**II- Mr. Dennis is Not a Danger to the Community**

Mr. Dennis has been convicted at trial of three (3) counts of cyberstalking. In Mr. Dennis' crimes of conviction, none of the victims suffered physical harm and Mr. Dennis has no prior violent convictions (or convictions of any kind), nor are there any allegations of violence anywhere in Mr. Dennis' personal history. In his current conditions of confinement at MDC Brooklyn over the last three months, Mr. Dennis has been exposed to daily physical violence and threats of violence in his immediate surroundings for the first time in his life. He has even had specific threats of violence directed at him personally. A diminutive, 60-year-old, former lawyer suffering from severe heart problems and hernias, with no history of handling physical confrontations of any type, Mr. Dennis candidly reports feeling terrified that his physical safety is in constant peril due to the

---

[3] The government had previously calculated Mr. Dennis' sentencing guideline range at 30-37 months in its "Pimentel Letter" (see Exh. B), whereas the Probation Department has calculated a guideline range of 46-57 months. *PSR (Draft) ¶116*.

nature and conditions of his current confinement amongst violent and turbulent individuals in both his fellow inmates and, frankly, the jailers as well.

Mr. Dennis, of course, acknowledges that his crimes of conviction entail the element of having caused the victims to feel emotional distress and/or concern over their physical well-being. Nevertheless, his conduct, all of which occurred well over two years ago, was directed at certain specific individuals for very precise reasons and none of those individuals was ever physically harmed in any way by Mr. Dennis. Consistent with the recognition by the Court pre-trial in granting Mr. Dennis liberty under 18 U.S.C. §3142, the community in general is not endangered by Willie Dennis being at liberty. Even the witnesses found to be the victims of his cyberstalking conduct are not endangered to any extent whatsoever by granting his request for release pending sentence as they would be specifically protected by the conditions of his release. Mr. Dennis' severe health concerns and his singular focus on providing the necessary care for himself and to his struggling parents are simply the only things he has time to be focused on or to act in service of. He has no inclination, much less any ability to seek out any of those who testified for the government in securing his conviction and seek to do them any manner of harm. Mr. Dennis is essentially a broken man with a broken body- one just functional enough to enable him to care for his parents and attend to his own increasingly dire health concerns.

The community we are asking Your Honor to release Mr. Dennis to, with an appropriate bond and/or set of conditions, is the same community he lived a peaceful, dutiful, and law-abiding life in for nearly one year prior to his trial in October. It is the community in Florida where Mr. Dennis settled in 2021 so that he could be there to provide the care his parents needed, a community where he found the various doctors he needed for his collection of health and physical ailments, and where he lived without any violent behavior or allegations of violence. Mr. Dennis is a non-violent

person who, with bond, would be moving back to the community where he has already demonstrated nonviolent, law-abiding behavior in full compliance monitoring by pre-trial services in that district. Living with his parents at all times, for whom he is a dutiful servant and who hold moral suasion over the defendant, can give this Court confidence that the nonviolent lifestyle the defendant has, essentially, always lived would continue upon his release and that he would return to Court as directed for sentencing.

### III- There are a Combination of Release Conditions that would Reasonably Assure the Appearance of Mr. Dennis Back in Court and the Safety of the Community

Mr. Dennis has previously presented the Court with three financially responsible persons (FRPs) who each signed a bond making them morally and financially responsible for Mr. Dennis' return to court to stand trial. See, ECF No. 32. His brother, Jeffrey Dennis, as well as close associates, Katie Walker and Patrick Rucker, all continue to possess the necessary financial resources and holdings, and all continue to hold moral and ethical suasion over the defendant. This is a less restrictive alternative to keeping Mr. Dennis, in his dire physical condition, locked up in a jail that has been overrun by violence, lack of sanitary conditions, lockdowns which have exceeded 7 days and which suffers from a well-documented failure to provide even basic care to its inhabitants, all while his elderly and infirm parents and entire family struggle each day due to his absence. The notoriously poor conditions at the MDC in Brooklyn have not improved in recent months and Mr. Dennis reports that since being locked up at the MDC, he has witnessed numerous acts of violence and been personally threatened for refusing to take sides in a conceptual disagreement between different factions of his fellow inmates.

The FRPs would be willing to once again sign a bond to assure the defendant's return to court. Counsel suggests, and the FRPs have agreed to sign, a two hundred-thousand-dollar bond

($200,000). The defendant's parents have agreed to allow the defendant to remain living in their home as they desperately need and desire that he be permitted to do so in order to care for them as had been recently. He would abide by standard conditions concerning travel (restricted to the Central District of Florida, SDNY, EDNY and New Jersey[4]), restrictions on his personal associations (not to associate with any witnesses identified as victims in the indictment or anyone else associated in any manner with K.L. Gates), report on a regular basis to law enforcement or pretrial services, comply with home detention (with the caveat he be allowed, with prior approval by PTS, to accompany his parents to medical appointments and perform routine, approved tasks on their behalf that he is otherwise permitted to engage in for himself or for his own appointments and procedures) relinquish all travel documents and not apply for new ones, undergo any psychological or medical treatment or therapy as required by PTS, and, if the Court believed it remains necessary, be subject to electronic monitoring.

Specifically, bond pending sentencing would be appropriate under the following conditions:

1- Two hundred-thousand-dollar (200,000) bond signed by three (3) financially responsible persons.
2- Travel restricted to the Central District of Florida, SDNY, EDNY, and District of New Jersey.
3- Home confinement with a caveat to allow, with prior approval by PTS, him to accompany his parents to medical appointments and perform routine, approved tasks on their behalf that he is otherwise permitted to engage in for himself or for his own medical appointments or procedures.
4- Requirement to stay at his parents' home in Sanford, Florida
5- Restrictions on personal associations with any current or former of employees of K.L. Gates, or anyone the defendant knows to be accused of criminal activity.
6- Regular reporting to pretrial services.

---

[4] For purposes of enabling his travel to and from the New York area as in his most recent pre-trial order of December 3, 2021. See, ECF No. 16.

7- Surrender all travel documents and agree not to apply for new ones.
8- Refrain from the use of any illegal or non-prescribed drugs.
9- Agree to allow PTS access to residence.
10- Electronic Monitoring should the Court deem the same appropriate.

WHEREFORE, the defendant submits the instant application, through present counsel, pursuant to 18 U.S.C. § 3143(a)(1), and thanks the Court for its consideration thereof.

Sincerely yours,

//s// David Jason Cohen//s//
David J. Cohen, Esq.
Cohen Forman Barone, LLP.