

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 10, 2023

<u>**VIA ECF**</u>

The Honorable Jed S. Rakoff
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

    **Re:**   ***United States v. Willie Dennis*, 20 Cr. 623 (JSR)**

Dear Judge Rakoff:

    The Government respectfully submits this letter in opposition to defendant Willie Dennis's application for release pending sentencing. Dkt. No. 130 ("App."). Sentencing in this matter is scheduled for February 8, 2023—less than one month from today. The application for release pending sentencing should be denied because, as the Court explained when it remanded the defendant following his conviction at trial, the defendant cannot meet the high burden of establishing by clear and convincing evidence that he is not a risk of flight or a danger to any person or the community.

    **I.**    **Background**

    Following a five-day trial before Your Honor in October 2022, the defendant was convicted on three counts of cyberstalking. During the trial, the Government presented substantial evidence that the defendant engaged in a years' long campaign of harassment and intimidation against his former colleagues at the law firm where the defendant previously worked. The Court saw dozens, if not hundreds, of the threatening emails and text messages the defendant sent the three victims in this case. The Court also heard from the victims themselves, who testified about the fear and emotional distress they experienced—and continue to experience—as a result of the defendant's conduct. The evidence at trial further established the defendant's ties to the Dominican Republic, and included evidence that the defendant was arrested in that country in or about November 2021 on the charges in the Indictment.

    At the conclusion of the trial, the Court remanded the defendant. In so doing, the Court found that the defendant poses "a substantial flight risk" and "a danger to the community." Tr. 833:18-22. As to risk of flight, the Court explained that the defendant "previously went to the Dominican Republic and had to be captured there, and that was before he had been convicted. Now, of course, he faces potentially substantial time." Tr. 833:18-21. As to dangerousness, the Court explained that it was "particularly struck by the fact that, as she testified, [one of the victims] remains in fear of what may happen if [the defendant] is at large." Tr. 833:22-834:3. The Court

further explained that post-conviction, "the burden of proof shifts to the defendant" to show entitlement to release, and that the defendant did not satisfy his burden. Tr. 834:4-8.

On January 6 and 9, 2023, the defendant, through counsel, filed an application to be released on bail pending his sentencing, which is currently scheduled for February 8, 2023. In that application, the defendant argues that he is not a risk of flight and that he should be released pending sentencing so that he can "continue to provide the much-needed care for his parents." App. 3. The defendant further argues that he is not a flight risk given his own medical issues. *Id.* The defendant acknowledges that since his remand he has been receiving medical treatment, and was placed at Bellevue Hospital for some time to ensure that he received the appropriate care and treatment that he needed. The defendant also argues that he is not a danger to the community, and that his convictions do not reflect dangerousness. *Id.* at 6-7. In fact, he argues that *he* is in danger by being at the Metropolitan Detention Center. *Id.* at 6.

In a letter from the defendant's attending physician at Bellevue dated November 18, 2022, which the defendant filed with the Court in support of his bail application, the doctor explains that the defendant suffers primarily from three medical conditions under treatment: (1) severe coronary artery disease, (2) severe peripheral vascular disease, and (3) a large inguinal hernia and an umbilical hernia. Dkt. No. 132-1 at 1. With respect to the first issue, the doctor explains that the defendant is "not experiencing current symptoms from [that] condition[]," and that, as a result, the cardiologists at Bellevue "have concluded that [the defendant] can be medically managed without a surgical procedure." *Id.* With respect to the second issue, the doctor explains that that it is "not an emergent condition," but may require a procedure in the future. *Id.* With respect to the third issue, the doctor explains that the defendant may one day schedule an elective surgery. *Id.* At the end of the letter, the doctor explains that the defendant does "not need to stay in the hospital while waiting for these procedures but he will need access to [the following] medications . . . while in federal custody": (1) ASA [aspirin] 81 mg daily, (2) Jardiance 25 mg daily, (3) Spironolactone 25 mg daily, (4) Entresto 24-26 mg daily, (5) Metoprolol XL 50 mg daily, and (6) Atorvastatin 80 md daily. *Id.*

According to the defendant's medical records from the Bureau of Prisons ("BOP"), the defendant is receiving each of those medications as prescribed. *See, e.g.*, Ex. A (2023 BOP Medical Records) at 9-10 (listing active prescriptions, including daily prescriptions for "Aspirin 81 MG," "Empagliflozin 25 MG," which is the generic term for Jardiance, "Spironolactone 25 MG" "Sacubitril-Valsartan 24-26 MG," which is the generic term for Entresto, "Metoprolol Succ XL 24 Hour 50 MG," and "Atorvastatin 80 MG"); Ex. B (2022 BOP Medical Records) at 63-65 (showing recent pharmacy dispensing for certain of those prescriptions).[1]

## II.    Relevant Law

Once a defendant has been convicted at trial, the federal bail statute "establishes a presumption of detention." *United States v. Abuhamra*, 389 F.3d 309, 319 (2d Cir. 2004). "To secure release on bail after a guilty verdict, a defendant must rebut this presumption with clear and convincing evidence that he is not a risk of flight or a danger to any person or the community."

---

[1] With the Court's permission, Exhibits A and B, which contain sensitive personal information not in the public record, will be filed under seal.

*Id.*; *see* 18 U.S.C. § 3143(a)(1) ("the judicial officer shall order a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence … be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released").

Under this framework, the defendant's burden in establishing entitlement to release pending sentencing is "plainly substantial." *Abuhamra*, 389 F.3d at 319. That is because the Government has a "strong and obvious … interest in detaining defendants who have been found guilty beyond a reasonable doubt of serious crimes: such detention promotes public safety by removing a presumptively dangerous person from the community; it also encourages general respect for the law by signaling that a guilty person will not be able to avoid or delay imposition and service of the sentence prescribed by law." *Id.* at 320.

### III.     Discussion

As the Court already determined when it remanded the defendant at the conclusion of the trial in this matter, the defendant poses "a substantial flight risk" and "a danger to the community" if released, and therefore the defendant cannot meet the high bar of showing his entitlement to release pending sentencing. Tr. 833:17-834:8. There is no basis for revisiting that ruling.

*First,* regarding risk of flight, as the Court explained, the defendant potentially faces a "substantial" amount of prison time following his conviction at trial. Tr. 833:19. Specifically, the defendant is facing up to five years' imprisonment on each count of conviction, and the defendant's Guidelines range is 46 to 57 months' imprisonment under the U.S. Sentencing Guidelines ("U.S.S.G." or the "Guidelines"), as the U.S. Probation Office has correctly calculated in the Presentence Investigation Report ("PSR").[2] That creates a substantial incentive for the defendant to flee—an incentive that is only magnified as the sentencing date in this matter looms closer and the reality of a long prison term becomes imminent. Further, as the Court explained, the defendant "previously went to the Dominican Republic and had to be captured there." Tr. 833:18-19. On its face, that foreign connection creates a substantial risk of flight, particularly when coupled with the amount of prison time the defendant is facing and the imminence of sentencing.

Contrary to the suggestion in the defendant's bail application (App. 2), the fact that the defendant was largely compliant with the terms of his pretrial release does not mitigate the risk of

---

[2] The Government's *Pimentel* letter to the defendant, dated October 6, 2022, incorrectly stated that the defendant's Guidelines range was 30 to 37 months' imprisonment based on an offense level of 19 and criminal history category I. The offense level calculation in the *Pimentel* letter incorrectly failed to apply a two-level enhancement pursuant to U.S.S.G. § 2A6.2(b)(1)(E) because the offense in this case involved "a pattern of activity involving stalking, threatening, harassing, or assaulting the same victim." That offense level calculation also included a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, which is no longer applicable now that the defendant was convicted at trial. The PSR correctly applies the two-level enhancement under U.S.S.G. § 2A6.2(b)(1)(E), and does not include credit for acceptance of responsibility, resulting in a total offense level of 23. At offense level 23, with criminal history category I, the defendant's resulting Guidelines range is 46 to 57 months' imprisonment.

flight the defendant poses. Now that the defendant has been convicted and sentencing is imminent, the risk of flight is more acute than it was pre-trial.

Nor do the health issues faced by the defendant's parents or by the defendant himself alter the analysis. *See* App. 2-5. That the defendant's parents are elderly and in poor health, although regrettable, does not establish that the defendant will appear for sentencing if bailed. If anything, that the defendant would wish to remain with his ailing parents creates an incentive *not* to appear at sentencing. Likewise, the defendant's own health issues—although regrettable as well—are not relevant to the question of release pending sentencing. Under the bail statute, the question is whether the defendant can establish by clear and convincing evidence that he does not pose a risk of flight; and for the reasons explained, the defendant comes nowhere close to meeting that burden. In any event, as the letter submitted by the attending physician at Bellevue Hospital Center and the defendant's medical records from BOP show, the defendant is receiving the medical attention he requires while incarcerated and his conditions, as well as the potential need for any further elective surgical procedures, will be closely monitored. *See* Dkt. No. 132-1; Exs. A and B.

*Second,* if released pending sentencing, the defendant poses a danger to the community in general and to the three statutory victims in this case in particular. As the Court explained, the evidence at trial showed that the defendant "seemingly loses total control" at times, and that lack of control makes the defendant dangerous. Tr. 833:24-25. The evidence showed that the defendant was relentless in harassing and threatening his victims. The defendant sent his victims thousands of messages over the course of two years, even after being warned to stop, and on several occasions even intimidated his victims in person. The victims testified that, as a result of the defendant's conduct, they felt scared and threatened, were forced to alter their daily routines to feel safe, and took extreme measures to protect themselves from the defendant. Two of the victims testified that they continued to be fearful of the defendant, and the Court had the opportunity to observe how apparent that fear was at trial. That is the very definition of dangerousness.

Further, it is clear from his bail application that, even after hearing the testimony at trial, the defendant still does not accept responsibility for his actions or feel remorse for the harm he caused to the victims. Instead, he attempts to minimize his conduct by arguing that "his conduct … was directed at certain specific individuals for very precise reasons and none of those individuals was ever physically harmed in any way by Mr. Dennis." App. 7. That lack of remorse only amplifies the danger the defendant poses to the victims, particularly now that those victims have testified against him.

4

For these reasons, the defendant has not established and cannot establish by clear and convincing evidence that he does not pose a risk of flight or danger to the community or any other person if released. Accordingly, his request for release pending sentencing should be denied.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: _____
Stephanie Simon / Sarah L. Kushner
Assistant United States Attorneys
(212) 637-2581 / (212) 637-2676

cc:   David Cohen, Esq.